UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:06-CV-00160-R

GUS CUNNINGHAM                                              PLAINTIFF

v.

TARGET CORPORATION                                          DEFENDANT

### MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment (DN 117). Plaintiff has responded (DN 121), and Defendant has replied (DN 124). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is GRANTED.

### BACKGROUND

Plaintiff Gus Cunningham ("Cunningham") alleges that Defendant Target Corporation ("Target") violated the Kentucky Civil Rights Act ("KCRA"), KRS 344.010, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* when it discriminated against him with respect to his race. Cunningham also claims that Target retaliated against him in violation of the KCRA and Title VII.

Cunningham is a former employee of Target. He worked for Target from July 18, 2000, until May 29, 2007. For these seven years he was employed as an Executive Team Leader for Hardlines ("ETL-HL")– a position Cunningham describes as roughly equivalent to an assistant store manager.[1] Cunningham is an African-American male.

---

[1] At Target, hourly team members report to Team Leaders. Team Leaders report to Executive Team Leaders ("ETLs"), who report to Store Team Leaders ("STLs") (the functional equivalent of a store manager). Store Team Leaders, in turn, report to District Team Leaders ("DTLs") who are responsible for a number of stores within a given district. Finally, District Team Leaders report to Group Directors who cover multiple districts.

On July 6, 2005, Cunningham filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  In an attached letter, he outlined six issues and corresponding complaints of race discrimination.  These included an incident in 2004 when Cunningham witnessed a co-worker use a racially derogatory comment, as well as not being given the opportunity to interview for promotions, being denied a pay raise, and being removed from a special training group.  The EEOC dismissed Cunningham's charge five months later. On March 6, 2006, Cunningham filed the current lawsuit.

On July 30, 2007, Cunningham filed a second Charge of Discrimination with the EEOC. In this charge, he alleged that Target retaliated against him for filing the July 2005 charge and for filing the instant lawsuit.  Cunningham stated that Target retaliated by criticizing his work performance, issuing disciplinary counseling, and ultimately terminating his employment on May 29, 2007.  After the EEOC issued a right to sue letter, Cunningham amended his complaint to include the allegations of retaliation.

Cunningham claims that Target discriminated against him on the basis of his race by removing him from the "Future Potential Training" group and by denying him a promotion to a Store Team Leader position.  Cunningham also claims that Target unlawfully retaliated against him by placing him on an action plan, harassing him, and ultimately terminating him.  Target filed this motion, arguing that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law on Cunningham's race discrimination and retaliation claims.  Target also argues that it is entitled to summary judgment on its after-acquired evidence and failure to mitigate affirmative defenses.

2

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

ANALYSIS[2]

**A.      Race Discrimination**

   *1.  Removal from the Future Potential Training Group*

  Cunningham first alleges that Target discriminated against him on the basis of his race by removing him from a Future Potential Training ("FPT") group.  According to Edward Turner, the FPT group was an informal group that he, as the Human Resources Manager, and a District Team Leader ("DTL") "put together as a training opportunity for individuals who Target felt had the ability to take on additional responsibilities in the future." (Turner Decl. ¶ 3.)  He testified that by placing employees in the FPT group Target was recognizing that "they had potential skills that would allow them to do more for the company" and was giving them "an avenue . . . to gain more information, to gain more knowledge and to gain more expertise that potentially could lead them to that next position." (Turner Dep. 42:2-42:13, Feb. 19, 2009.)  Cunningham also testified that members of the FPT group "were getting the opportunity that the others were not getting to become a [Store Team Leader] as a result of the training that was offered." (Cunningham Dep. 121:1-121:4, Jan. 3, 2007.)  The FPT group met a total of three times in a classroom setting, and the meetings typically lasted no more than six hours.  (Turner Decl. ¶ 4.)  Cunningham attended only the first meeting.  (Turner Decl. ¶ 4.)

  Target placed Cunningham in the FPT group in 2005.  Prior to joining the group, Target

---

  [2] Cunningham alleges that Target violated the KCRA and Title VII.  Cunningham's claims under the KCRA are subject to the same analysis as his claims under Title VII.  "The language of the KCRA generally tracks the language of Title VII and, thus, 'should be interpreted consonant with federal interpretation.'" *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000) (quoting *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 820 (Ky. 1992)).

4

agrees that Cunningham was a strong contributor and received high marks on his performance reviews in 2003 and 2004.  However, Target states that it removed him from the group after he limited his willingness to relocate and refused the third ETL-Logistics position that Target offered him.

There is no dispute that in August 2004, Cunningham indicated that he would only relocate within a one-hour driving radius of Louisville.  (Cunningham Dep. 58:20-60:3, Jan. 3, 2007.)  In October 2004, he stated that his willingness to relocate outside of an hour radius was negotiable based on compensation.  (Cunningham Dep. 263:20-264:23, Oct. 11, 2006.)  Then in May 2005, Cunningham told his Store Team Leader ("STL"), Lisa Klinglesmith, that his first STL position would have to be in the Louisville area, and that he would consider relocating after eighteen months in that position.  (Cunningham Dep. 60:5-60:11, Jan. 3, 2007; Klinglesmith Dep. 35:4-35:10, Feb. 19, 2009.)  During that conversation he also turned down Target's third offer of an ETL-Logistics position.  (Cunningham Dep. 63:22-64:2, 268:21-268:25, Oct. 11, 2006; Cunningham Dep. 102:2-102:11, Jan. 3, 2007; Klinglesmith Dep. 47:16-49:7, Mar. 4, 2007.)

To prove that Target discriminated against him when it removed him from the FPT group, Cunningham must first establish a prima facie case of discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  He may establish a prima facie case either by (1) providing direct, credible evidence of discriminatory intent, or by (2) raising an inference of discrimination from circumstantial evidence though the four-pronged *McDonnell Douglas* test.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

Cunningham argues that the 2004 incident when Matt Lincoln, ETL-Human Relations, made a racially derogatory comment in his presence constitutes direct evidence of discrimination.  (Cunningham Dep. 69:24-70:6, Jan. 3, 2007.)  Specifically, though his recollection was vague, Cunningham testified that Lincoln used "[t]he 'N' word, nigger."  (*Id.* 70:12.)  Cunningham reported the incident to Klinglesmith, who said she would address the matter.  (*Id.* 76:2, 78:9.)  Later, Lincoln apologized to Cunningham.  (*Id.* 81:13.)  Lincoln did not receive written corrective action for making the racial slur.  (Klinglesmith Dep. 84:6-12, Mar. 3, 2007.)  No one from Target ever made any other racial comments in Cunningham's presence. (Cunningham Dep. 83:11, Jan. 3, 2007.)

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).  "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Neither Lincoln's comment nor the way that Klinglesmith addressed it is direct evidence that Target discriminated against Cunningham when it removed him from the FPT group. Lincoln's derogatory remark made in 2004 cannot compel the conclusion that Target's decision

6

to remove Cunningham from the FPT group in 2005 was motivated by racial animus. Likewise, the fact that Klinglesmith did not issue Lincoln a written corrective action for making the derogatory remark cannot compel the conclusion that Target's decision to remove Cunningham from the FPT group was motivated by racial animus. For a jury to use evidence of the 2004 incident to conclude that Cunningham's removal from the FPT group was discriminatory it would have to make many inferences. Because a jury would have to make inferences to reach the conclusion offered by Cunningham, the 2004 incident cannot be direct evidence of discrimination by Target.

Cunningham may also establish prima facie case of discrimination by proving that he (1) is a member of a protected class, (2) was qualified for his job, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated non-protected employees. *See, e.g.*, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). If Cunningham succeeds in stating a prima facie case, the burden shifts to Target to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See, e.g.*, *id.* If Target does so, then the burden shifts back to Cunningham to show that Target's proffered reason was merely pretext for discrimination. *See, e.g.*, *id.*

First, Cunningham, as an African American, is a member of a protected class.

Second, Target argues that Cunningham was not qualified for his job at the time he was removed from the FPT group because he was not meeting Target's legitimate expectations. However, even according to Target, Cunningham's performance did not start to deteriorate until after he was removed from the FPT group. Target does not claim that Cunningham was not performing to its satisfaction prior to being removed from the group. Therefore, at the time he

was removed from the group, he was qualified for his position as an ETL.

Third, Target also argues that removing Cunningham from the FPT group was not an adverse employment action. An adverse employment action constitutes "a materially adverse change in the terms and conditions of employment" that is "more disruptive than a mere inconvenience or an alteration of job responsibilities," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (citation omitted). Removal from the FPT group did not constitute a termination, demotion, loss of benefits, or diminished material responsibilities. Cunningham does not identify how else removal from the FPT group could be an adverse employment action. In fact, Cunningham does not even address Target's contention that removal from the group was not an adverse employment action.

Though it may be implied from Cunningham's response brief that he believes that removal from the FPT group is an adverse employment action because removal meant he would no longer be considered for promotions, Turner testified that an ETL did not need to be in the FPT group in order to be promoted. (Turner Dep. 25:17-25:22, Feb. 19, 2009.) Thus, Cunningham has not shown that removal from the FPT group was an adverse employment action.

Fourth, even if Cunningham could show that removal from the FPT group was an adverse employment action, he has not provided evidence that he was treated differently than similarly situated non-protected employees. Though Cunningham does point to Neil Crowley, a

8

Caucasian male and another member of the FPT group, Cunningham has not shown that Crowley was similarly situated to Cunningham.  Cunningham states that Crowley's relocation status was similarly limited, and that Crowley was not removed from the FPT group.  However, the evidence shows that Crowley's relocatability was broader than Cunningham's.

In 2001, Crowley limited his relocation status to the Louisville area.  (Crowley Dep. 22:6-22:11.)  In the summer of 2003, however, after his father-in-law passed away, Crowley removed the restrictions on his relocation status.  (*Id.* 23:16-24:3.)  Then, around May 30, 2005, Crowley changed his relocation status to exclude Cleveland and Pittsburgh.  (*Id.* at 26:12-26:15.) But Crowley was still willing to relocate anywhere else in the group's region, including several cities more than an hour away from Louisville.  (*Id.* at 26:20-27:2.)  Crowley's testimony comports with Turner's testimony that Crowley either had no relocation restrictions as of 2003, or was broadly limited to Kentucky, Indiana, and Ohio.  Even if Crowley's relocation status was limited to Kentucky, Indiana, and Ohio when Crowley was in the FPT group, Crowley cannot be considered similarly situated to Cunningham because Crowley's relocation limitations were much broader than Cunningham's.

Therefore, because Cunningham has not demonstrated that removal from the FPT group was an adverse employment action and because he has not provided evidence that he was treated differently than similarly situated non-protected employees, he has not proven his prima facie case.  But even assuming that Cunningham could satisfy his prima facie burden, Target has articulated a legitimate, non-discriminatory reason for removing him from the group– his limited relocation status and his refusal of a third ETL-Logistics position.  The job description for an ETL-HL position provides that reasonable relocatability is expected for career development.

9

(Cunningham Dep. Ex. 14.)  The Target Executive Team Member Handbook states that "[o]ften promotional opportunities require openness to relocation."  (Turner Dec. Ex. A.)  Klinglesmith also testified that to be considered for an STL promotion an employee must be willing to relocate.  (Klinglesmith Dep. 35:2, Mar. 3, 2007.)  Thus the burden would shift back to Cunningham to prove Target's proffered reasons were merely pretext for discrimination.

Cunningham argues that Target gave two conflicting reasons for removing him from the FPT group, and these inconsistencies are evidence that Target's reasons for removing him from the group are merely pretext for discrimination.  He states that in May 2005 when Klinglesmith informed him that Target was removing him from the FPT group, she cited his limited relocation status as the reason, but in September 2005 when Target responded to the EEOC's request for documentation, it stated that he was removed from the FPT group because he refused certain developmental opportunities.

Klinglesmith testified that after her spring 2005 conversation with Cunningham in which he told her that his relocation status was limited to the Louisville area and that he was not interested in the ETL-Logistics position, she spoke with her superior Jerry Moffit, who said he would speak with his superior Mark Gredecki.  (Klinglesmith Dep. 49:13-50:6, Mar. 3, 2007.)  Subsequently, Moffit told Klinglesmith that she needed to notify Cunningham that he was being removed from the FPT group because his relocation status was closed and because he was not willing to transfer to another store.  (*Id.* 55:4.)  When Klinglesmith informed Cunningham, however, she only cited his relocation status and neglected to tell him that his unwillingness to take the ETL-Logistics position was also a reason he was being removed from the group.  (*Id.* 56:4; Cunningham Dep. 268:12, Oct. 11, 2006.)  These dual reasons, contrary to Cunningham's

10

assertions, are not inconsistent– they are in accord with each another.  Cunningham was unwilling to relocate outside of the Louisville area, and he refused a position that was outside the Louisville area.  While inconsistent or contradictory reasons for an employment decision may sometimes be evidence of pretext, these facts do not present such a situation.

In sum, Cunningham does not have direct evidence of discrimination, he has not shown that removal from the FPT group was an adverse employment action, he has not proven that he was treated differently than a similarly situated non-protected employee, and he lacks evidence of pretext.  Therefore Target is entitled to summary judgment on Cunningham's claim of race discrimination with respect to his removal from the FPT group.

### 2.    *Denial of Promotion to Store Team Leader*

Cunningham also alleges that Target discriminated against him on the basis of his race by denying him a promotion to a Store Team Leader Position.  To set forth a prima facie case of discrimination based upon a failure to promote, Cunningham must show: "(1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions."  *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).  Cunningham has only established the first prong of this test.

Cunningham has not provided evidence that he applied and was qualified for a promotion.  In fact, he did not even express interest in a specific STL position.  (Cunningham Dep. 297:24, Oct.11, 2006; Cunningham Dep. 105:17-106:3, Jan. 3, 2007.)  Further, he does not make an argument or present evidence that he was qualified for an STL position.  Target asserts

11

that Cunningham was not qualified for a promotion to an STL position because he lacked sufficient knowledge of the various areas of the store, outside Hardlines.  Target also states that after his performance began deteriorating in 2005 he was not qualified for an STL position based on his inadequate performance.

Cunningham has also not provided evidence that he was considered for and denied a promotion.  Target states that he was never considered for a promotion to STL, he was never interviewed for a promotion, and was he was never denied a promotion.

Finally, Cunningham has not provided evidence that other non-protected employees of similar qualifications received promotions.  He does not address Target's argument that his qualifications were not similar to individuals who were promoted to STL.

Because the Court finds that Cunningham has not met his prima facie burden, Target is entitled to summary judgment on his claim of race discrimination with respect to failure to promote.

### B.    Retaliation

Cunningham also claims that Target unlawfully retaliated against him for filing a complaint with the EEOC and for filing this lawsuit by placing him on an action plan, harassing him, and ultimately terminating him.  To maintain a claim for retaliation, Cunningham must establish that: (1) he engaged in Title VII-protected activity; (2) Target knew that he engaged in the protected activity; (3) Target subsequently took an adverse employment action against him; and (4) the adverse action was causally related to the protected activity.  *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009).  If Cunningham sets out his prima facie case, the burden of production shifts to Target to offer a non-discriminatory reason for the adverse employment

12

action.  *Id.*  If Target meets this burden, then the burden of production shifts back to Cunningham to demonstrate that the proffered reason was mere pretext.  *Id.*

Target concedes that Cunningham satisfies the first three prongs of the test.  Cunningham filed a Charge of Discrimination with the EEOC asserting racial discrimination on July 6, 2005.  He filed the instant lawsuit on March 6, 2006.  On March 31, 2006, he received a lower score on his fiscal year 2005 performance review than he had in previous years.  On April 12, 2006, he received a formal counseling for unsatisfactory performance.  Six months later, on October 13, 2006, he received a written warning for unsatisfactory performance.  He was terminated on May 29, 2007.

Target does dispute, however, that these adverse actions were causally related to Cunningham filing the EEOC charge or this lawsuit.  To establish this causal connection, Cunningham "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had" he not engaged in the protected activity.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  "In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action."  *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516-17 (6th Cir. 2009).  At the prima facie stage, the burden of proving a causal connection is minimal.  *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

> 1.    *Retaliatory Discipline*

Cunningham argues that harassing conduct and poor performance reviews occurred

immediately after he filed his EEOC charge, and this discipline was dissimilar than what other ETLs at his store experienced.  He refers to his 2005 performance review, in which he asserts that he was criticized for issues that other ETLs were not, however he does not cite any specific evidence.  Cunningham also states that on December 19, 2005, Klinglesmith told him that he needed to work at least a nine-hour work day, and other ETLs who worked only eight or eight and one-half hour shifts were not criticized.  (Cunningham Aff. ¶ 29.)  But in his deposition Cunningham testified that he did not know whether Klinglesmith counseled other employees on their work hours.  (Cunningham Dep. 153:9, Jan. 3, 2007.)  Nor has he presented any evidence of the hours worked by other ETLs at the store.  Cunningham cannot create a genuine issue of material fact solely by contradicting his prior deposition testimony.  *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Cunningham also claims that in early 2006 he was singled out for "white-glove" inspections by the visiting DTL.  (Cunningham Aff. ¶ 29.)  But he has not cited any specifics or any evidence as to how he was scrutinized more than the other ETLs.  On April 16, 2006, Cunningham received a written counseling for unsatisfactory performance.  This counseling, prepared by Klinglesmith, detailed instances in which she found Cunningham's performance unsatisfactory, made suggested improvements, and concluded by warning him that failure to show significant improvement within the month would result in further disciplinary action, up to and including termination.  In his response, Cunningham addresses several of criticisms made by Klinglesmith.  He does not challenge their truthfulness, instead he points to other employees who he claims had similar issues but were not disciplined.  Target states that other employees were disciplined for performance issues, and that no other employee that Cunningham referred to

14

demonstrated the breadth of performance issues that he did.  On October 13, 2006, Cunningham received a written warning for unsatisfactory performance.  STL Chad Sanders, who had replaced Klinglesmith, prepared the report and again detailed instances of unsatisfactory conduct on the part of Cunningham.  Cunningham objects to the report because he states that he was unfairly singled out.

The temporal proximity between the protected activity and the adverse actions, and the evidence that Target treated Cunningham differently from similarly situated individuals, is weak. The only events that took place within a two month time range were the filing of this lawsuit, Cunningham's performance review, and his first formal counseling.  *See Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (finding inference of causal connection tenuous when disciplinary actions occurred two to five months after protected activity).  More importantly, Cunningham's allegations that he was singled out from other ETLs for critiques are vague and without sufficient evidentiary support.  But even assuming that Cunningham could prove a causal connection between the adverse actions and the protected activities, he has not shown that Target's legitimate, non-discriminatory reason for taking such actions were merely pretext for discrimination.

Target states that Cunningham received a lower performance review score and was disciplined because starting in May 2005 his performance began deteriorating.  To prove that this reason is merely pretext, Cunningham must show that the reason "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action."  *Ladd*, 552 F.3d at 502.  Cunningham admitted that he let his performance deteriorate after he was removed from the FPT group. (Cunningham Dep. 219:25-223:4, Oct. 11,

15

2006.)  Moreover, Cunningham cannot raise an issue of material fact as to the quality of his work by simply challenging the judgment of his superiors.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990).  He must put forth evidence that Target did not honestly believe the reasons given for his discipline.  *Abdulnour v. Campbell Soup Supply Co.*, 502 f.3d 496, 502 (6th Cir. 2007).  Cunningham, however, does not even make an argument that Target's reason is pretext.

Because the Court finds that Cunningham has not satisfied his burden, Target is entitled to summary judgment on his retaliatory discipline and performance review claim.

### 2.    *Retaliatory Discharge*

Cunningham also claims that he was terminated in retaliation for filing the 2005 EEOC charge and the instant lawsuit, but he has not demonstrated a causal connection between these protected activities and his termination, as required to maintain a claim for retaliation.  *See Ladd*, 552 F.3d at 502.  He has not shown a temporal connection between the events; Cunningham was terminated nearly two years after he filed his first EEOC charge, and about fifteen months after he filed the instant lawsuit.  He also has not presented any evidence that Target treated him differently from similarly situated employees.

Instead, Cunningham argues that he was constructively discharged based on the alleged retaliatory discipline he experienced.  But, as Target notes, to constitute constructive discharge, an employee "must actually quit."  *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F3d 1073, 1080 (6th Cir. 1999).  Cunningham did not quit– Target terminated him on May 29, 2007.  Thus Cunningham's constructive discharge argument is without merit.  Cunningham also briefly argues that the written counseling Sanders intended to give him on May 28 would have resulted

16

in his termination.  Not only has Cunningham failed to explain how this demonstrates a causal connection, he has not provided any evidence that this assertion is true.  Target states that he would not have been terminated, he would only have received a Final Warning.

Moreover, Cunningham has not provided any evidence that Target's reason for terminating him is actually pretext for discrimination.  Target states that Cunningham was terminated because he violated company policy by recording conversations with Target team members while at work.  On May 28, 2007, STL Sanders met with Cunningham with the intention of asking him about a tape recorder that another employee had told Sanders that Cunningham was carrying.  Cunningham does not recall the details of this conversation with Sanders, in which Target states that Sanders read the anti-recording policy to Cunningham and informed him that he could be terminated if he failed to abide by the policy.  Cunningham, however, does not dispute that he used a tape recorder during meetings and that he intended to record his conversations with Sanders.  On May 29, 2007, Sanders met with Cunningham again, and Cunningham told Sanders that he intended to continue recording future conversations.  Thereafter, Sanders terminated Cunningham.  (Sanders Dec.; Cunningham Dep. 75:18-89:23, Feb. 17, 2009.)  Cunningham attempts to justify his use of the tape recorder, stating that he needed it for his notes and for his own defense, but does not address how Target terminating him for violating the anti-recording policy could be pretext for discrimination.

Because the Court finds that Cunningham has not satisfied his burden, Target is entitled to summary judgment on his retaliatory discharge claim.

17

**CONCLUSION**

For the reasons stated above, Target's Motion for Summary Judgement is GRANTED.[3]

An appropriate order shall issue.

---

[3] Because the Court grants summary judgment in favor of Target, it will not address Target's after-acquired evidence and failure to mitigate defenses.

18